IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-110-FL

| | | |
|---|---|---|
| JANICE R. STOKLEY, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-22, DE-24] pursuant to Fed. R. Civ. P. 12(c). Claimant Janice Stokley ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on November 17, 2009, alleging disability beginning March 2, 2006. (R. 10, 172-73). Her claim was denied initially and upon reconsideration. (R. 10, 83, 96). A video conference hearing before the Administrative Law Judge ("ALJ") was held on September 15, 2011, at which Claimant was

represented by counsel and a witness and vocational expert ("VE") appeared and testified. (R. 27-71). At the hearing, Claimant amended her alleged onset date to January 1, 2008. (R. 49, 69-70). On October 14, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 10-21). On March 21, 2013, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of treating physician opinions and (2) failure to weigh testimony and written statements of a hearing witness. Pl.'s Mem. [DE-23] at 4-8.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 12). Next, the ALJ determined that Claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, status post cervical spine fusion, mild bilateral carpal tunnel syndrome, and bursitis of the right knee. *Id.* The ALJ also determined that Claimant had a non-severe impairment of allergic rhinitis. (R. 13). However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with the following limitations:

> lift, carry, push and/or pull 10 pounds occasionally and small objects, such as files, ledgers and small tools, frequently; sit 6 hours and stand/walk a total of 2 hours out of an 8 hour day with normal breaks and a sit/stand option at the work station every 30 minutes to 1 hour; occasionally climb ramps and stairs, stoop and kneel, but never climb ladders, ropes or scaffolds, balance for safety, such as on dangerous or slippery surfaces, crouch, crawl or work around hazards, such as unprotected heights or dangerous moving machinery; occasionally reach overhead and frequently reach out, and frequently handle and finger bilaterally. To account for any decreased concentration resulting from pain, the claimant was limited to performing simple,

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1527(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. SSR 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

routine, repetitive tasks.

(R. 15). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 16). At step four, the ALJ concluded that Claimant did not have the RFC to perform the requirements of her past relevant work as a housekeeper. (R. 19). Nonetheless, at step five, upon considering claimants age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 20).

## B.     Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 49 years old and unemployed. (R. 31). Claimant is a high school graduate. *Id.* Claimant was self-employed as a housekeeper where her duties included cleaning houses. (R. 32, 34). Claimant references no other past work experience.

Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. These medical conditions include insomnia, depression, anxiety, osteoarthritis, chronic nerve pain (neuropathy), back and leg pain, degenerative right knee problems, osteoporosis in the right hip, and bilateral carpal tunnel syndrome. Claimant's severe impairments began in July of 2005 following her involvement in a major automobile accident and a fall down her stairs approximately six months later. (R. 39). Claimant underwent neck fusion surgery in 2005. (R. 42). Claimant rated her neuropathy pain as her worst problem. (R. 41). Claimant described her neuropathy as her nerves being pinched "from [her] head down [her] arms, back of [her] neck, [and] down both legs." (R. 42). She described the pain in her low back and legs as burning, throbbing, and shooting, as though someone is twisting her nerves with pliers. (R. 43). Claimant's pain is

5

constant and worsens when she tries to walk, bend, stoop, squat, or lift. (R. 46).

Claimant stated that she sleeps approximately three to five non-consecutive hours per night and watches the clock approximately every hour during the night. (R. 37). Claimant takes Amitriptylene for her insomnia. *Id.* Claimant also takes medication for anxiety and depression which Claimant testified developed from her inability to work and do other activities beginning in approximately 2005. (R. 38, 46). Claimant takes medication for her osteoarthritis, which she indicates is present throughout her body. *Id.* Claimant also experiences right knee pain which is constant and worse when Claimant is standing and on her legs. (R. 44). Claimant received a Cortisone shot in her knee in 2008. *Id.* Claimant receives medication for pain in her hips resulting from osteoporosis. (R. 45). Claimant's pain frequently affects her ability to concentrate. (R. 47-48).

Claimant testified that she is unable to work due to pain associated with her neuropathy. (R. 52). Claimant has good days and bad days with her pain levels, and estimates she had two bad days per month in 2008. (R. 48-49). Claimant testified that in 2008 she pushed herself to do laundry, but could not do it because she would "pay for it for two or three days later." (R. 51). Further, Claimant was not able care for her bipolar daughter because of the stress it caused. (R. 50). Claimant estimates she can occasionally lift 10 pounds, rarely lift 20 pounds and cannot lift a large container of milk. (R. 48). When describing her attempts to perform routine chores such as cleaning the dishes, Claimant testified she starts to experience nerve pain in her arms which feels like her arms are "going dead." (R. 52). From 2006 to 2008, Claimant continued to work cleaning houses, but only eight to nine hours per week depending on how her body held up and there might be weeks in between where she did not work at all. (R. 32-34, 40). Her customers and husband would help her load and unload her cleaning supplies from the car. (R. 35, 40-41).

## C. Witness Testimony at the Administrative Hearing

Claimant's husband of thirty years, James Stokley, testified at the administrative hearing. (R. 55-65). According to Mr. Stokely, Claimant worked full time cleaning houses until she was involved in an automobile accident in 2005 and "everything just started going downhill." (R. 56-57). In 2008, Claimant worked eight or nine hours per week sporadically, working less hours more often. (R. 57). Mr. Stokley testified Claimant could not work full time in 2008 because of her constant pain. *Id.* Claimant sometimes drops a coffee cup trying to pick it up. *Id.* Mr. Stokley testified that in 2008 he washed the dishes, completed the laundry, mowed the grass and trimmed the bushes, and took care of the pool. (R. 59). Claimant would try to help around the house, but constantly had to stop and rest. *Id.* Claimant was still capable of driving in 2008, but often packed a bag when visiting her parents who live approximately thirty miles away because she was concerned that her medication would make her sleepy while driving. (R. 62-63). Mr. Stokley does not believe that Claimant was capable of working full time in any capacity in 2008 because of the pain and depression that she was experiencing. (R. 63-64). Mr. Stokley estimated that Claimant would have to be absent from work as many as fifteen days, and no less than four days, per month. (R. 61, 65).

## D. Vocational Expert's Testimony at the Administrative Hearing

Mark Steadnicky testified as a VE at the administrative hearing. (R. 65-70). After the VE's testimony regarding Claimant's past work experience (R. 66), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed several hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual can

> lift, carry, push, and or pull 10 pounds occasionally, and small objects such as files,

7

ledgers, and small tools frequently. The individual can sit six hours and stand and walk a total of two hours out of an eight hour work day with normal breaks. The individual can occasionally climb ramps and stairs, stoop and kneel, but never climb ladders, ropes, or scaffolds, balance for safety, such as on dangerous or slippery surfaces, crouch or crawl. The individual can occasionally reach over head and frequently reach out and should not work around hazards such as unprotected heights or dangerous moving machinery. The individual can frequently handle and finger bilaterally.

(R. 66-67). The VE responded that such an individual could not perform Claimant's past work. (R. 67). The ALJ next asked the VE whether there would be any transferrable skills from this past work and the VE responded in the negative. *Id.* Next, the ALJ asked the VE if there are any unskilled jobs that such an individual could perform. *Id.* The VE responded that the individual could perform the jobs of telephone information clerk (DOT # 237.367-046), document preparer (DOT # 249.587-018), and telephone order clerk (DOT # 209.567-014). *Id.* Additionally, the ALJ asked the VE whether the same hypothetical individual, having the additional limitation of requiring a sit/stand option at their work station every thirty minutes to one hour, could perform the three jobs previously listed. (R. 68). The VE responded in the affirmative. *Id.* The ALJ then added the restriction of limiting the individual to simple, routine, repetitive tasks. *Id.* The VE responded that the individual could perform the three jobs already listed. *Id.* The ALJ next added the restriction that the individual could not sustain work at this level of exertion for eight hours a day, five days a week, or an equivalent work schedule due to interruptions from pain. *Id.* The VE stated that the hypothetical individual could not perform any job. *Id.*

Claimant's counsel next questioned the VE and asked if the three jobs already listed would be available to the aforementioned individual if she missed more than four days per month at work. (R. 69). The VE responded in the negative. *Id.* The ALJ followed up by asking the VE how many

8

Case 7:13-cv-00110-FL Document 27 Filed 07/03/14 Page 8 of 19

absences would be tolerated. *Id.* The VE responded that one to two days a month would typically be permitted, but anything beyond that prevents an employee from performing the essential job functions. *Id.*

## V. DISCUSSION

### A. The ALJ's evaluation of the medical opinion evidence.

Claimant contends the ALJ failed to address the opinion of Claimant's treating neurosurgeon and failed to properly evaluate the opinion of Claimant's primary care physician. Pl.'s Mem. at 5-7. Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.* Similarly, "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *see Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted). Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(c)(2).

9

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

The regulations distinguish between a treating physician's medical opinions and the physician's legal conclusions. "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Legal conclusions are opinions on issues reserved to the ALJ, such as "statement[s] by a medical source that [the claimant is] disabled or unable to work." *Id.* § 404.1527(e)(1) (quotations omitted). "While the ALJ must give a treating physician's medical opinions special weight in certain circumstances, the ALJ is under no obligation to give a treating physician's legal conclusions any heightened evidentiary value." *Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005) (unpublished) (citations and quotations omitted); *see* 20 C.F.R. § 404.1527(e)(3). However, the ALJ is not free to ignore a treating physician's legal

10

conclusions and must still "'evaluate all the evidence . . . to determine the extent to which the [treating physician's legal conclusion] is supported by the record.'" *Morgan*, 142 F. App'x at 722 (quoting SSR 96-5p, 1996 WL 374183, at *3 (July 2, 1996)) (alteration in original).

    *i.*    *Dr. Melin*

The first medical opinion at issue appeared in a physician's note dated February 22, 2011, wherein Dr. Melin, a treating neurosurgeon, opined the Claimant is not able to return to gainful employment given "her subjective complaints, her surgeries, and her studies." (R. 714, 723). Claimant contends the ALJ's failure to discuss explicitly the opinion of Dr. Melin warrants remand. Pl.'s Mem. at 5-6. The Commissioner argues that the ALJ did not err in failing to explicitly consider Dr. Melin's opinion because the opinion is not a medical opinion and the opinion does not relate to the relevant time period in Claimant's alleged disability. Def.'s Mem. [DE-25] at 12. Claimant correctly points out that it was error for the ALJ to omit discussion of Dr. Melin's 2011 opinion, and the undersigned finds that the ALJ's failure is not excused by a harmless error analysis.

Here, the ALJ discussed medical records from Dr. Melin prior to Claimant's alleged disability onset date (January 1, 2008), but omits any mention of his February 2011 opinion. (R. 13, 16). In fact, the ALJ's mention of any medical records post-DLI (December 31, 2008), which would include Dr. Melin's 2011 opinion, is contained in the following paragraph of her opinion:

> The undersigned notes that the claimant submitted multiple medical records for the period following the date last insured, which suggest a progression of symptoms. However, these records are not relevant to the claimant's current claim for disability as they are for the time period following the claimant's date last insured and show a worsening of the claimant's symptoms after the acute trauma of her fall in May 2009 (Exhibit 10F, page 16).

(R. 19). While it is could be assumed that the ALJ's consideration of Dr. Melin's 2011 opinion is

11

evidenced by the above paragraph, as the opinion appears in a post-DLI treatment note, this is not sufficient to satisfy the ALJ's obligation to evaluate opinions and determine if they are supported by the evidence of record. *See Moreno v. Colvin*, No. 4:12-CV-143-D, Order [DE-31] (E.D.N.C. Sept. 6, 2013) (remanding case for ALJ's failure to mention treating physician opinion given importance of properly analyzing physician opinion). Moreover, the fact that Dr. Melin's opinion more closely resembles a legal conclusion does not allow the ALJ to simply ignore the opinion without explanation. *Morgan*, 142 F. App'x at 722 (quoting SSR 96-5p, 1996 WL 374183, at *3).

Although the Commissioner offers credible reasons for potentially discounting Dr. Melin's opinion had the ALJ in fact addressed the opinion, the court cannot rely on these reasons as a basis for overlooking the ALJ's obvious failure to address a treating physician opinion. *See Smith v. Barnhart*, 395 F. Supp. 2d 298 (E.D.N.C. 2005) (finding it is not for the court to decide what weight would have been assigned a physician's opinion even assuming the Commissioner's argument that there is substantial inconsistent evidence). Dr. Melin was a treating neurologist that began treating Claimant as early as March 2006, performed surgery on Claimant in April 2007, referred Claimant to a pain management practice who routinely copied Dr. Melin on Claimant's evaluations, and continued to evaluate Claimant and conduct studies post-DLI. As outlined in the relevant regulations and rulings, the ALJ must evaluate every medical opinion received, 20 C.F.R. § 404.1527(c), and must even give consideration to opinions from treating physicians on matters reserved for the Commissioner, SSR 96-5p, 1996 WL 374183, at *3, to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence.

Moreover, the court does not find this error to be harmless because the ALJ did not consider a consistent opinion in her decision which would adequately indicate the consideration given by the

ALJ for such similar opinions and Dr. Melin's opinion is not consistent with the ALJ's RFC determination.[2] *Cf. Yuengal v. Astrue*, No. 4:10-CV-42-FL, 2010 WL 5589102, at *9 (E.D.N.C. Dec. 17, 2010), *adopted by* 2011 WL 147297 (E.D.N.C. Jan. 18, 2011) (finding the ALJ's failure to acknowledge a treating physician's opinion harmless error because the ALJ considered an identical opinion from another physician and adequately explained the decision to assign little weight to the identical opinion); *Yurek v. Astrue*, No. 5:08-CV-500-FL, 2009 WL 2848859, at *6 (E.D.N.C. Sept. 2, 2009) (adopting memorandum and recommendation finding harmless error by ALJ in failing to mention various medical opinions when the ALJ discussed and explained opinions similar or identical to those not mentioned). Additionally, the ALJ's summary dismissal of all post-DLI record evidence as irrelevant is not sufficient for a finding of harmless error because courts have routinely held that evidence dated post-DLI is not automatically irrelevant when such evidence addresses continuously existing conditions and Dr. Melin, even in 2011, was treating Claimant for conditions existing during the relevant disability period under review. *See Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) (stating that medical evaluations made two years subsequent to expiration of insured status are not automatically barred from consideration and may be relevant to prove a previous disability). Accordingly, the ALJ's failure to mention the opinion of Dr. Melin was error and, therefore, the case should be remanded. On remand, the ALJ should reconsider the opinion of Dr. Melin, and if the ALJ finds the opinion should be discounted, she should clearly articulate her reasons based on the relevant regulatory factors.

---

[2] Dr. Thomas stated in a medical questionnaire that Claimant was severely impaired prior to December 31, 2008, and likely to miss more than four days per month of work. (R. 728-32). This opinion was considered and weighed by the ALJ in her decision, but the undersigned does not liken Dr. Melin's opinion to Dr. Thomas' opinion such that consideration of Dr. Thomas' opinion makes the ALJ's failure to consider Dr. Melin's opinion harmless error.

13

*ii.    Dr. Thomas*

The second medical opinion at issue appears in a "Physical Residual Functional Capacity Questionnaire" form completed by Dr. Alan Thomas, Claimant's treating primary care physician, on September 14, 2011. (R. 728-31). The ALJ accorded no weight to this opinion because the opinion is not supported by Dr. Thomas' own treatment notes for the period in question or by other treatment providers such as Claimant's pain management providers. (R. 18-19). Claimant contends that the ALJ failed to assign the proper weight to Dr. Thomas' opinion and that this warrants remand. Pl.'s Mem. at 7. The Commissioner contends that the ALJ properly considered the opinion under the relevant regulatory standards and did not err. Def.'s Mem. at 16.

In considering Dr. Thomas' opinion, the ALJ stated more fully the following:

> The undersigned also has considered but does not give weight to the medical source statement of the claimant's treating physician, Dr. Alan Thomas, at Exhibit 26F, because Dr. Thomas' opinion is not supported by his own treatment notes at Exhibit 9F for the period in question. Although Dr. Thomas is the claimant's long time doctor, his records show relatively benign examinations of the claimant during the period in question with few, if any, abnormalities noted that would support his opinion. Additionally, his opinion is not supported by the findings of the claimant's pain management doctors and health care providers at Coastal Rehabilitation Medicine Associates at Exhibit 10F during the period in question. As noted in detail above, these providers saw the claimant on a regular basis during the period in question and did not note abnormalities or findings that would prevent the claimant from performing the limited range of sedentary work described above. This finding is supported by the statement of Ms. Christensen in August 2010.

(R. 18-19). Here, the ALJ offered legitimate reasons for rejecting Dr. Thomas' opinion which are supported by substantial evidence and the undersigned will not undertake to re-weigh conflicting evidence. *See Mastro*, 270 F.3d at 176 (noting the court's duty is to determine if substantial evidence supports the ALJ's conclusions - not to reweigh conflicting evidence).

In criticizing the ALJ's rationale for discounting Dr. Thomas' opinion, Claimant essentially

14

contends the ALJ improperly weighed the evidence before her. However, the ALJ thoroughly summarized Dr. Thomas' treatment of Claimant from the relevant period and that of other medical providers, indicating for the court the substantial evidence supporting the ALJ's weight assignment. First, the ALJ generally noted that many of Dr. Thomas' notes show "benign examinations." (R. 18); *see* (R. 338) (February 2009 exam finding free range of motion without limitation in extremities; no inflammation or effusion in joints, but slight effusion in right knee and prescribed ibuprofen; normal neurological exam); (R. 339) (April 2008 exam finding the same); (R. 342) (November 2007 exam finding the same). Additionally, the ALJ compared Dr. Thomas' opinion to treatment notes from Coastal Rehabilitation Medicine Associates which detailed Claimant's consistently high American Chronic Pain Association ("ACPA)" quality of life scores of 9/10, Claimant's moderate reporting of pain levels, and otherwise routine exam findings. (R. 17, 19); *see* (R. 386, 388, 392, 394, 397, 399, 401) (seven visits in March through October of 2008 showing consistent ACPA scores of 9/10 ); (R. 386-87) (October 2008 report of 6/10 average pain and 5/10 current pain; no functional loss findings); (R. 388-89) (September 2008 report of 4/10 average pain and 1/10 current pain; Claimant working more hours per day; no functional loss findings); (R. 392-93) (July 2008 report of 4/10 average pain and 5/10 current pain; current regimen controls pain to continue work full-time; no functional loss findings); (R. 394-95) (June 2008 report of 4/10 average pain and 1/10 current pain; largely normal exam findings); (R. 397-98) (April 2008 report of 5/10 average pain and 3/10 current pain; no functional loss findings); (R. 399-400) (March 2008 report 5/10 average pain and 2/10 current pain; no functional loss findings); (R. 401-02) (February 2008 report of 3/10 average pain and 3/10 current pain; regimen improved pain to allow a return to work); *but see* (R. 377) (April 2009 note showing the first decrease in Claimant's ACPA score to 7-8/10).

15

Having reviewed the materials cited and relied on by the ALJ in considering the weight to assign Dr. Thomas' opinion, it is apparent that substantial evidence supports the ALJ weight assignment. The fact that Claimant can point to other evidence in the record that supports her claimed impairments does not diminish the ALJ's analysis. It is not the responsibility of this court to determine the weight of the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Accordingly, Claimant's argument as to Dr. Thomas' opinion is without merit. Additionally, in light of the court's remand regarding Dr. Melin's opinion, which may support Dr. Thomas' opinion, the ALJ may reconsider its treatment of Dr. Thomas' opinion as necessary.

**B.    The ALJ's evaluation of lay witness testimony.**

Claimant contends the ALJ failed to make proper findings regarding the credibility of Mr. Stokley (her husband), a hearing witness. Pl.'s Mem. at 7-8. Specifically, Claimant contends the ALJ erred because she only summarized Mr. Stokley's testimony and did not discuss the weight she gave his testimony or written statement provided in the record. *Id.* Defendant contends that the ALJ did not err because she assessed the credibility of Claimant and Mr. Stokley together, making it clear the consideration given to Mr. Stokley's statements. Def.'s Mem. at 19.

Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence. *See Laws*, 368 F.2d at 644. "An ALJ should and must consider lay corroboration, if any, of the claimant's subjective complaints." *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2004) (quotation omitted), *aff'd*, 179 F. App'x 167 (4th Cir. 2006) (per curiam). "Great weight should be given the [ALJ's] finding where credibility of witnesses is involved." *Id.* (quotation omitted). However, if the ALJ decides to reject lay testimony concerning a claimant's pain or other symptoms, the ALJ must do so

16

explicitly and with sufficient specificity to enable the court to decide whether there are legitimate reasons for the ALJ's disbelief and whether the ALJ's determination is supported by substantial evidence. *See Hatcher v. Sec'y, Dep't of HHS*, 898 F.2d 21, 23-25 (4th Cir. 1989); *Pitta v. Astrue*, No. 5:11-CV-356-D, 2012 WL 3524829, at *4 (E.D.N.C. Aug. 14, 2012) (noting the "testimony by lay witnesses may be discounted when there is contrary evidence within the record").

Mr. Stokley testified at the administrative hearing as to how Claimant's physical impairments and pain limited her ability to work outside and inside the home.[3] (R. 55-65). Mr. Stokley indicated that Claimant was not working full-time in 2008 because of her constant pain and that he performed the majority of the household chores. *Id.* The ALJ acknowledged and summarized Mr. Stokley's testimony immediately after discussing Claimant's hearing testimony. (R. 16). Next, the ALJ found Claimant's testimony regarding the intensity, persistence and limiting effects of her symptoms not credible and explained how the medical evidence did not support Claimant's testimony. (R. 16-19). Although the ALJ did not indicate whether she found Mr. Stokley's testimony to be credible, and assuming *arguendo* this was error, the ALJ's decision clearly indicates that she considered Mr. Stokley's testimony concerning Claimant's limitations alongside Claimant's own hearing testimony thereby making any error harmless. *See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992) (noting arguable deficiency of failing to specifically discredit witness has no bearing on outcome when the witness's testimony is discredited by the same evidence that proves claimant's claims not credible); *Pitta*, 2012 WL 3524829, at *4 (finding no error in the ALJ's consideration of testimony by two lay witnesses where "[t]he ALJ's decision ma[de] clear that he evaluated [the lay witness]

---

[3] The written third party function report submitted by Mr. Stokley on March 4, 2010, is largely consistent with the hearing testimony. (R. 214-221). Therefore, any contention by Claimant as to the ALJ's consideration of Mr. Stokley's written statement is without merit because the court finds the ALJ's findings to apply equally to the written report.

17

testimony collectively along with [claimant's] testimony and that . . . he considered their testimony to be essentially consistent with [claimant's] testimony"); *McGlothlen v. Astrue*, No. 7:11-CV-148-RJ, 2012 WL 3647411, at *12 (E.D.N.C. Aug. 23, 2012) (finding any error by the ALJ in evaluating the lay witness opinion to be harmless because the ALJ properly discredited Claimant's testimony which was similar to the witness's testimony); *cf. Ivey v. Barnhart*, 393 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005) (adopting M&R recommending remand because the ALJ did not make a credibility determination of the witness testimony and it could not be determined whether the witness was not credible for the same reasons the ALJ found claimant not credible). Accordingly, Claimant's argument is without merit.

## VI. CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-22] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-24] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 3rd day of July 2014.

_____
Robert B. Jones, Jr.
United States Magistrate Judge